UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSALINA FLORES, | No.  1:26-cv-0078 TLN CSK |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| CHRISTOPHER CHESTNUT, Warden, California City Detention Facility, | |
| Respondent. | |

Petitioner, a native of El Salvador, is proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Petitioner and her then 15-year-old daughter entered the United States on or around August 4, 2019. (ECF No. 1 at 4-5.)  Petitioner was initially detained, underwent a credible fear interview with an asylum officer, and was found to be credible and to have a credible fear of persecution.  (ECF Nos. 12-10, 1-8, 12-4.)  On August 18, 2019, petitioner was released on parole.  (ECF No. 12-11.)  On October 25, 2025, petitioner reported to the U.S. Immigration and Customs Enforcement ("ICE") in San Francisco as ordered and was re-detained without explanation.  (ECF No. 1 at 5.)  This habeas action concerns petitioner's re-detention.  For the following reasons, this Court recommends granting the petition for a writ of habeas corpus and ordering petitioner's immediate release.

///

///

1

## I.    FACTUAL BACKGROUND[1]

Petitioner is a native of El Salvador.  (ECF No. 1-6.)  In August 2019, petitioner and her minor daughter entered the United States, and were detained by ICE on August 4, 2019.  (See ECF No. 1-8 at 2 (listing 8/4/2019 as date of detention); ECF No. 12-11.)  On August 8, 2019, an asylum officer conducted a credible fear interview of petitioner, finding that petitioner was credible and had a credible fear of persecution.  (ECF No. 1-8 at 5-6.)  On this same date, a Notice to Appear issued placing petitioner in standard removal proceedings pursuant to 8 U.S.C. § 1229a (Immigration & Nationality Act ("INA") § 240)[2] as "an alien present in the United States who has not been admitted or paroled" in violation of 8 U.S.C. § 1182(a)(6)(A)(i) (INA § 212(a)(6)(A)(i)), and not having proper documents in violation of 8 U.S.C. § 1182(a)(7)(A)(i)(1) (INA § 212(7)(A)(i)(I)).  (ECF No. 12-4 at 1.)  The Notice also stated it was issued "after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture."  (Id.)  The date of appearance noted "TBD."  (Id.)  On August 18, 2019, petitioner was released from ICE custody and paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) with certain conditions.  (ECF No. 12-11.)

After her parole expired, on June 7, 2021, petitioner was issued a Notice to Appear on August 2, 2021, again placing petitioner in standard removal proceedings pursuant to 8 U.S.C. § 1229a (INA § 240), based on the same alleged violations as set forth in the previous notice, and again stated it was issued "after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture."  (ECF No. 1-4 at 2; ECF No. 12-2 at 1.)  The June 7, 2021 notice did not charge petitioner with violating any conditions of her release or refer to any alleged release violations, and identified petitioner as "an alien present in the United States who

---

[1]  Petitioner filed a verified habeas petition, attaching various documents from her immigration file, which respondents cite to in their response and do not dispute.  (See ECF No. 8.)  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit."  L. v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (citing McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)).

[2]   By contrast, standard removal proceedings are different from expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1) (INA § 235(b)(1)).  Respondents do not assert that petitioner is subject to expedited removal proceedings.  (See ECF No. 8.)

has not been admitted or paroled," not as an arriving alien.  (Id.)

Petitioner timely applied for asylum and for withholding of removal, and her application was received on August 20, 2021.[3]  (ECF Nos. 1 at 5, 1-7 at 2-3.)  On November 1, 2022, petitioner was notified that she and her daughter were scheduled for an in-person hearing on October 21, 2025.  (ECF No. 12-3 at 1-2.)  On September 9, 2025, both petitioner and her daughter were scheduled for an individual hearing in immigration court for August 8, 2028, noting "reset from Oct. 21, 2025."  (ECF Nos. 1 at 5, 1-5; ECF No. 12-1.)  The purpose of the August 2028 hearing was to adjudicate the pending asylum applications, which were based on their past persecution and fear of return to El Salvador.  (Id.)

However, on or around October 24, 2025, ICE ordered petitioner to appear at the ICE office in San Francisco on Saturday, October 25, 2025.[4]  (ECF No. 1 at 5.)  No reason was given.  (Id.)  Petitioner was unable to contact her attorney beforehand due to the short notice provided.  (Id.)

On October 25, 2025, petitioner reported to ICE as required and was detained without any explanation.  (ECF No. 1 at 5, 6; ECF No. 12-5 at 1 (arrest warrant).)  Due to petitioner's detention, her case was severed from her daughter's case, and on October 28, 2025, petitioner's daughter was issued notice of her individual hearing before the immigration court on August 8, 2028.  (ECF No. 1 at 6; ECF No. 1-5 at 3-4.)

Petitioner, through counsel, sought a custody redetermination under 8 C.F.R. § 1236.  (ECF No. 1 at 6.)  On December 8, 2025, an immigration judge denied petitioner's request because the immigration judge concluded that it lacked jurisdiction over a bond proceeding, citing Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025).  (ECF No. 1-3 at 4; ECF No. 12-7 at 4.)  The immigration judge also found that because the district court order in Maldonado

---

[3]  The request for asylum was accompanied by counsel's notice that petitioner and her daughter were members of the class action Mendez Rojas v. Wolf, No. 2:16-cv-01024-RSM (W.D. Wash. July 28, 2020), which would make her asylum application timely.  (ECF No. 1-7 at 5.)

[4]  Neither party provided a copy of this notice, if it was provided in writing.  Respondents stated they "do not appear to have documentary evidence of a notice requiring the petitioner to appear on October 25, 2025."  (ECF No. 12 at 1.)

Bautista v. Santacruz, No. 5:25-cv-1873 SSS BFM (C.D. Cal. Nov. 20, 2025), was not a final judgment and had no "binding effect," the Hurtado case remained in effect, depriving the immigration court of jurisdiction.  (Id.)

On December 9, 2025, petitioner was notified that her asylum case is set for video hearing before an immigration judge on April 3, 2026.  (ECF No. 1-5 at 2.)

## II.    PROCEDURAL BACKGROUND

On January 5, 2026, petitioner filed her petition for writ of habeas corpus.  (ECF No. 1.) On January 7, 2026, the district court ordered petitioner to file a motion for temporary restraining order if she sought immediate relief.  (ECF No. 3.)  No motion was filed.

On January 8, 2026, this Court directed respondents to file a response to the petition within seven days and ordered that petitioner may file a reply within seven days after being served with the response.  (ECF No. 4.)

On January 15, 2026, respondents timely filed a response to the petition.  (ECF No. 8.) Petitioner did not file a reply.  In response to the Court's order (ECF No. 10), on February 3, 2026, respondents filed a supplemental response with additional documents.  (ECF No. 15.) Briefing is now complete.

## III.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV.    DISCUSSION

The habeas petition raises three claims for relief.  First, petitioner contends that the mandatory detention provision of 8 U.S.C. § 1225(b)(2) does not apply to petitioner because she was detained under § 1226(a), and she was therefore wrongfully denied a bond hearing by the immigration judge on December 8, 2025, based on § 1225(b)(2).  (ECF No. 1 at 20.)  Second, petitioner argues the immigration judge's wrongful application of § 1225(b)(2) was arbitrary, capricious and not in accordance with the law, violating the Administrative Procedure Act, 5 U.S.C. § 706(2).  (Id.)  Third, petitioner contends that she is being detained in violation of her right to due process because she is not a danger to the community or a flight risk, and has no criminal history, thus her detention bears no reasonable relation to the purpose of detention.  (ECF No. 1 at 21.)  Petitioner asserts, in the verified habeas petition, that she has complied with all requirements given to her by ICE and the U.S. Enforcement and Removal Operations ("ERO"), and has never failed to appear for any court hearings.   (ECF No. 1 at 5 ¶ 17.)  Petitioner has never committed a crime, been charged with a crime, or shown that she is a danger to the community or a flight risk.  (Id. at 7 ¶ 23.)  At the time of her detention, petitioner had a pending and legitimate asylum application, which had provided her with employment authorization and protection from removal.  (Id. at 21-22.)  Petitioner contends her removal is not imminent.  (Id. at 22.)

In their answer, respondents contend that the Court should deny the petition because petitioner is "an applicant for admission to the United States." (ECF No. 8 at 3.)  Respondents argue that § 1225(b)(2)(A) "applies to an alien who is physically present in the United States but not lawfully admitted, regardless of how long they have been physically present here." (Id. at 2 (quoting Altamirano Ramos v. Lyons, 2025 WL 3199872, at *8 (C.D. Cal. Nov. 12, 2025).)  Thus, respondents contend that petitioner is subject to mandatory detention under both statutory and constitutional law.  (Id. at 3.)

### A.    Due Process Claim (Claim Three)

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  "It is clear that

5

commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Id. at 690. The Court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (finding due process requires pre-deprivation hearing before revocation of parole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted). In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole

6

will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in her "continued liberty." Id. at 481-84.

Here, petitioner was released in August 2019 by immigration officials on parole and remained on release for over six years until she was re-detained in October 2025 upon reporting to ICE as instructed. Petitioner therefore had a protected liberty interest in her release, regardless of which detention statute applies. See Chavarria v. Chestnut, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025); F.M.V. v. Wofford, 2025 WL 3083934, at *4-5 (E.D. Cal. Nov. 4, 2025). "The Court therefore need not determine whether § 1225 or § 1226 applies in this case because petitioner has a liberty interest in [petitioner's] continued release regardless of the applicable detention scheme." Cajina v. Wofford, 2025 WL 3251083, at *3 (E.D. Cal. Nov. 21, 2025); see also Doe v. Becerra, 787 F. Supp. 3d 1083, 1092-93 (E.D. Cal. 2025) (finding petitioner had a liberty interest in his continued liberty even though petitioner conceded that he was subject to mandatory detention under § 1225(b)(1)(B)(ii)); Chavarria, 2025 WL 3533606, at *5 n.3 (declining to resolve statutory basis for the petitioner's detention after determining petitioner was paroled under § 1182(d)(5)(A) and likely to succeed on the merits of due process claim). "Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute." Ramazan M. v. Andrews, 2025 WL 3145562, at *5-6 (E.D. Cal. Nov. 10, 2025). In addition, other district courts have found that non-citizens paroled into the United States pursuant to § 1182(d)(5)(A) have a protected liberty interest in their continued release. See, e.g., Chavarria, 2025 WL 3533606, at *3; Omer G. G. v. Kaiser, 2025 WL 3254999, at *5, 9 (E.D. Cal. Nov. 22, 2025) (petitioner was entitled to a post-deprivation bond hearing after he was initially released pursuant to § 1182(d)(5)(A) and later re-detained); Noori v. Larose, 2025 WL 2800149, at *9-10, 14 (S.D. Cal. Oct. 1, 2025) (enjoining re-detention of petitioner previously

7

released on parole pursuant to § 1182(d)(5)(A) during his removal proceedings without leave of the court); Rodriguez Cabrera v. Mattos, 2025 WL 3072687, at *9-11, 14 (D. Nev. Nov. 3, 2025) (ordering release of petitioner who was re-detained after he was initially released pursuant to § 1182(d)(5)(A)).

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. Nov. 21, 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (2017) (applying Mathews factors in immigration detention context). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a private interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.")); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For over six years, petitioner was free from custody before her re-detention. Petitioner has been working with authorization, paying taxes, supporting her minor daughter, and has no criminal record (ECF No. 1 at 5, 7; ECF No. 1-9), which respondents do not dispute (see ECF No. 8). See J.E.H.G. v. Chestnut, 2025 WL 3523108, at *11 (E.D. Cal. Dec. 9, 2025) (finding private interest in remaining on parole where "[detainee] pursued gainful employment, built relationships with her family and many in her community, and kept a clean criminal record").

Next, the Court turns to the second Mathews factor, the risk of erroneous deprivation to petitioner, and finds this factor weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the detainee] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16,

8

2025); Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *12 (N.D. Cal. Sept. 12, 2025).  Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  Indeed, petitioner's release on parole "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."  Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018); see Garro Pinchi v. Noem, 2025 WL 3691938, at *2 (N.D. Cal. Dec. 19, 2025) ("No matter which of these provisions applies to a given noncitizen, however, release is available only where a DHS officer or immigration judge has first determined that a noncitizen neither poses a threat to the public nor is likely to abscond.").  While the record does indicate that petitioner may have violated some terms of release such as missing check-ins (ECF No. 12-6), respondents do not contend that petitioner is or ever was a flight risk or a danger to the community, or that petitioner's release was revoked due to any violations (see ECF No. 8).  "Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [petitioner] has had an opportunity to determine whether there is any valid basis for her detention."  Pinchi v. Noem, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025) (quoting Singh v. Andrews, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. July 11, 2025)).  On balance, the Court finds the second Mathews factor weighs in petitioner's favor.

Finally, with regard to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without notice and without a hearing is "low."  See Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019); Doe, 787 F. Supp. 3d at 1094.  Detention hearings in immigration courts are routine, and impose a "minimal cost."  Doe, 787 F. Supp. 3d at 1094.  In addition, here, the government's interest is even lower because petitioner was released in August 2019, reflecting a determination by immigration officials that petitioner was not a flight risk or danger to the community, which the government does not dispute (see ECF No. 8).  See Pinchi, 792 F.

Supp. 3d at 1035.  Further, petitioner was found to be credible and have a credible fear of persecution by an asylum officer, and has a pending asylum application.  (ECF Nos. 1-8, 12-2.)

Overall, balancing these factors, this Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing.  "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added).  In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked.  Morrissey, 408 U.S. at 480-86.  "Numerous district courts have held that these principles extend to the context of immigration detention."  F.M.V., 2025 WL 3083934 at *6 (collecting cases).  Respondents identify no reason why a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process."  Guillermo M. R., 791 F. Supp. 3d at 1036.  Accordingly, the Court finds that petitioner is entitled to relief as to her due process claim.

### B.     Other Claims (Claims One and Two)

In light of the Court's recommendation that petitioner's requested relief be granted on her due process claim, the Court need not reach petitioner's remaining claims (claims one and two).

## V.     CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2. Respondents be required to immediately release petitioner Rosalina Flores from detention under the previously imposed conditions of release.

3. Respondents be enjoined and restrained from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that her physical custody is legally justified.

4.  If respondents have custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.) or possessions, respondents be ordered to return those to petitioner at the time of release.

5.  Within **seven days** of the adoption of these findings and recommendations, respondents be ordered to file a status report addressing petitioner's status.

6.  Judgment be entered in favor of the petitioner and the Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **seven** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 24, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/flor0078.157.HCgr.imm.FIN

11